**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 07-612-C**

**ADVANCED SOLUTIONS, INC.**                                **PLAINTIFF,**

**V.**                **MEMORANDUM OPINION AND ORDER**

**BRIAN CHAMBERLIN,**                               **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendant's motion to dismiss.  DE 5.

The court, having reviewed the record and being otherwise sufficiently advised, will

deny the motion.

**I.     Background**

The defendant, Brian Chamberlin, is a citizen of Ohio and, between

September 7, 2000, and July 9, 2007, was a citizen of Ohio and an employee of

Advanced Solutions, Inc. ("ASI"), a "value added reseller" of design software

manufactured by Autodesk, Inc.  DE 1-3, 2-5; DE 6, 2; DE 16, 3.  Chamberlin was

an account manager and then senior business development manager at ASI, "selling

and supporting the Autodesk software products in the Cincinnati, Ohio, area."  DE

1-2, 3-4.  At the commencement of his employment, Chamberlin negotiated and

executed a one-page agreement in Ohio, providing in part that

> pending the duration of this Agreement, and for three (3) years
> thereafter, he will not become an owner, officer, agent, employee,
> consultant, or in any other manner, either directly or indirectly, engage

1

> in any business in competition with the business of ASI engaged in by
> Brian pursuant to this Agreement within a one hundred mile radius of
> any ASI office nearest to customers or prospects which Brian works at
> anytime during the pendency of the Agreement.

DE 1-3, 14; DE 5, 4; DE 16, 2.  The agreement also required Chamberlin to

"maintain the confidentiality of ASI customer lists as well as any other confidential

information which he may be exposed to in the course of the Agreement."  DE 1-3,

14.

In addition to the non-compete and confidentiality provisions, the

employment agreement laid out Chamberlin's salary and commission, which was

set at 30% of gross sales, and a requirement he reimburse ASI for any attorney's

fees it might incur if he were to breach the agreement.  DE 1-3, 14.  Finally, the

agreement states that "[e]ither party may terminate this Agreement on ten (10)

days written notice" and "[a]ny disputes arising from this Agreement shall be

litigated in Jefferson County, Ky."  DE 1-3, 14.  The plaintiff states that throughout

his employment at ASI, Chamberlin was an excellent employee and salesperson

who generated millions of dollars in revenue for ASI and was ASI's highest paid

sales employee "for at least three consecutive years."  DE 3-2, 3.

William Kent Salmon, who owned 100% of ASI at the time of Chamberlin's

hiring and until October 2004, sold ASI to Michael Golway in October 2004

through a stock purchase and redemption agreement, resulting in a change in both

the ownership and the legal structure of ASI.  DE 3-2, 3.  The end result of an

ensuing series of mergers and acquisitions was that ASI went from having three

2

offices in Kentucky to having fourteen offices in six states.  DE 5, 8.  After Mr.

Golway took over ASI, Chamberlin's commission and compensation structure

changed, although he did not see an appreciable decrease in his income.

Chamberlin resigned from ASI on July 9, 2007, in order to move to a company that

did not compete with ASI.  DE 3-2, 3; DE 6, 3.  When things did not work out at

his new job, Chamberlin and ASI negotiated his return to ASI, but the return did not

occur.  DE 3-2, 4.

On October 22, 2007, Chamberlin began working for Hagerman & Company,

Inc. ("Hagerman"), a company in direct competition with ASI as an Autodesk Value

Added Reseller, in the Cincinnati, Ohio, area.  DE 3-2, 4.  ASI contacted

Chamberlin to remind him of his non-compete and confidentiality agreement with

ASI and, on October 22, 2007, sent cease-and-desist letters to Chamberlin and

Hagerman.  DE 3-2, 4.  Chamberlin went to work for Hagerman and, on October

24, 2007, ASI became aware he had contacted serveral ASI clients he had

serviced while at ASI, allegedly making negative comments about ASI and stating

his intention to open an office across the street from the ASI office in Cincinnati

where he previously worked.  DE 3-2, 4-5.

On November 5, 2007, ASI moved for a temporary restraining order.  DE 3.

After a hearing in front of the court on November, 13, 2007, a temporary

restraining order was entered upholding the terms of the agreement.  DE 8.  A

telephonic conference was held on November 19, 2007, at which time the

temporary restraining order was extended by agreement for twenty-one days, to expire on December 10, 2007.  DE 15.

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.  *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (2007) (citing *Conley v. Gibson,* 335 U.S. 41, 47 (1957)).  In order to avoid a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff has an obligation to provide the grounds of his entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *Id.* at 1964-1965.  This does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 1974. When ruling on a defendant's motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint.  *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007) (citing *Twombly).*

## III.    Analysis

### A. Choice of Law

Kentucky law governs the employment agreement at issue in this case. Under the long-standing approach first articulated in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court exercising diversity jurisdiction "must apply state

law to the substantive claims at issue" and, absent a choice-of-law provision,

"must look to the conflict of laws rules prevailing in the state in which the court

sits." *Republic Services, Inc. v. Liberty Mutual Ins. Co. et al*, 2007 U.S. Dist.

LEXIS 3140, at *4 (E.D. Ky. 2007).  Section 6 of the *Restatement (Second) of*

*Conflict of Laws* states:

> (1) A court, subject to constitutional restrictions, will follow a
> statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice
> of the applicable rule of law include
>> (a) the needs of the interstate and international systems,
>>
>> (b) the relevant policies of the forum,
>>
>> (c) the relevant policies of other interested states and the
>> relative interests of those states in the determination of the
>> particular issue,
>>
>> (d) the protection of justified expectations,
>>
>> (e) the basic policies underlying the particular field of law,
>>
>> (f) certainty, predictability and uniformity of result, and
>>
>> (g) ease in the determination and application of the law to be
>> applied.

Regarding the approach of Kentucky courts to conflict-of-law questions, the

Sixth Circuit recently observed, "[i]f there are significant contacts – not

necessarily the most significant contacts – with Kentucky, the Kentucky law

should be applied." *Id.* (citing *Adam v. J.B. Hunt Transport, Inc.*, 130 F.3d

219, 230-31 (6th Cir. 1997) (quoting *Foster v. Leggett*, 484 S.W.2d 827, 829

(Ky. 1972))) (internal quotation marks omitted).

For contractual claims, the Kentucky Supreme Court, in *Breeding v. Massachusetts Indemnity and Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982), adopted "the 'most significant relationship' test set forth in the *Restatement of Laws (Second) Conflict of Laws* § 188." *Republic Services, Inc.*, 2007 U.S. Dist. LEXIS at *7. The approach outlined in § 188 provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
>
> (2) In the absence of an effective choice of law by the parties (see § 187 [regarding when the parties include a choice-of-law provision]), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> > (a) the place of contracting,
> >
> > (b) the place of negotiation of the contract,
> >
> > (c) the place of performance,
> >
> > (d) the location of the subject matter of the contract, and
> >
> > (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
> >
> > These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-99

[regarding particular types of contracts, capacity to contract, and contract formalities] and 203 [regarding usury].

*Restatement (Second) of Conflict of Laws*, § 188.  In support of its argument Kentucky law applies, ASI points out that there is no mention of Ohio in the agreement; there are only Kentucky addresses written on the face of the agreement; at the time Chamberlin signed the agreement ASI only had three offices, all of which were in Kentucky; Chamberlin initially worked from ASI's Covington, Kentucky office, the agreement states all disputes shall be litigated in Jefferson County, Kentucky; and ASI claims it can identify "at least 60 Kentucky clients from which Defendant earned commissions" (Chamberlin states he had "approximately 20" Kentucky clients but the court will accept ASI's number for purposes of this motion to dismiss).  DE 14, 2.  Chamberlin argues Ohio law should apply because the agreement "was negotiated and executed in Ohio"; he "was hired to be an Account Manager selling and supporting the Autodesk software in Ohio"; he "worked almost exclusively out of ASI's Cincinnati, Ohio office"; the "vast majority" of his clients and commission-generating work were in Ohio; and Chamberlin has continually been an Ohio resident since before the date of the agreement.

After weighing the factors cited by ASI against the factors cited by Chamberlin, the court concludes Kentucky law governs the agreement.  While § 188(3) of the *Restatement (Second) of Conflict of Laws* states a preference for the law of the state of the negotiation and the performance of the contract and

the agreement was negotiated in Ohio and most of Chamberlin's work was in

Ohio, other factors, which "are to be evaluated according to their respective

importance with respect to the particular issue," weigh heavily against Ohio law.

The physical location of the employer is particularly important given the subject-

matter of a non-compete agreement and, at the time of the agreement (or the

"transaction," in the parlance of the *Restatement*), ASI was a Kentucky

corporation with offices only in Kentucky.  Moreover, Chamberlin initially worked

out of ASI's Covington office, a number of his clients were in Kentucky, and

ASI's client lists were presumably kept in the Kentucky offices at the time of the

agreement.

In addition to the non-exclusive list of factors from § 288 of the

*Restatement*, the court finds several additional factors support the conclusion

that the application of Kentucky law would better protect the justified

expectations of the parties.  The agreement made no mention of Ohio,listing

only the addresses of three Kentucky offices (from which the 100-mile non-

compete radii were presumably to be drawn), and specifically stating that all

disputes arising from the agreement were to be litigated in Jefferson County,

Kentucky.  While none of these factors is determinative by itself, taken together

with the factors in the preceding paragraph, there is at least as strong a case for

Kentucky law as there is for Ohio law governing the agreement.  When the court

factors in the preference of Kentucky courts for Kentucky law, *see* Republic

Services*, Inc.*, 2007 U.S. Dist. LEXIS 3140, at *4, the balance tips decisively in favor of Kentucky law.

### B. Enforceability of the Agreement

Kentucky law has no problem with non-compete agreements per se and in fact sees them as "a valuable business tool."  *See Hammons v. Big Sandy Claims Servs., Inc.*, 567 S.W.2d 313, 315 (Ky. App. 1978).  Under Kentucky law, there is a general public policy preference favoring "parties' freedom to contract for substantive rights."  *Tractor & Farm Supply v. Ford New Holland*, 989 F. Supp. 1198, 1203 (W.D. Ky. 1995).  Kentucky pubic policy also favors enforcement of non-compete agreements where an employee voluntarily gives up his employment.  In the words of the Kentucky Court of Appeals, "'[t]here is no basic public policy against such covenants, particularly where they invoke professional services.  In fact, the policy of this state is to enforce them unless very serious inequities would result.'"  *Hall v. Willard & Woolsey, P.S.C.*, 471 S.W.2d 316, (Ky. 1971) (quoting *Lareau v. O'Nan, Ky.*, 355 S.W.2d 679, 681 (Ky. 1962)).

Citing Ohio law, Chamberlin first argues the agreement is unenforceable because the acquisition of ASI by Mr. Golway in October 2004 effected an assignment of the agreement and thus voided it.  The Sixth Circuit, however, recently examined this issue and determined non-compete agreements are assignable under Kentucky law.  *See Managed Care Health Care Assocs. v.*

9

*Kethan*, 209 F.3d 923, 929 (6th Cir. 2000) (predicting the Kentucky Supreme Court would rule in favor of the assignability of such agreements after reviewing lower court decisions in Kentucky as well as the majority rule nationally). Therefore, Chamberlin's argument that ASI's assignment of his agreement voided it fails.

Chamberlin next argues the non-compete provision in the agreement is unreasonable as a matter of law.  As the Seventh Circuit has noted, "[i]n Kentucky, ancillary covenants [such as a covenant not to compete] are valid and enforceable if the terms are reasonable in light of the surrounding circumstances."  *Vencor, Inc. v. Webb*, 33 F.3d 840, 845 (7th Cir. 1994) (citing *Crowell v. Woodruff*, 245 S.W.2d 447, 449 (Ky. 1951)).  Such agreements must be narrow enough in scope "as to afford fair protection to the interests of the covenantee [while not being] so large as to interfere with the public interests or impose undue hardship on the party restricted."  *Hammons*, 567 S.W.2d at 315 (citing *Ceresia v. Mitchell, Ky.*, 242 S.W.2d 359 (1951)). In particular, Chamberlin takes issue with the agreement's geographical restriction ("within a one hundred mile radius of any ASI office nearest to customers or prospects which Brian works"), the duration of its non-compete clause (three years), and its activity restriction (Chamberlin must not work in any capacity at a company "engag[ing] in any business in competition with the business of ASI").

The geographical restriction requiring Chamberlin not to work within a 100-mile radius of ASI offices nearest to clients he serviced is not unreasonable per se under Kentucky law.  In fact, the Kentucky Court of Appeals has upheld a 200-mile restriction.  *See Hammons*, 567 S.W.2d at 315.  The court is sensitive to the defendant's argument that the new offices opened by ASI beyond the three Kentucky offices that were open when he signed the agreement make this restriction unreasonable.  Courts often employ what is known as a "blue pencil test" to strike offensive and divisible provisions of contracts without voiding the entire contract.  *See Raimonde v. Van Vlerah*, 325 N.E.2d 544, 546 (Ohio 1975).  According to the Kentucky Court of Appeals,

> [i]n the best considered modern cases, however, the court has decreed enforcement as against a defendant whose breach has occurred within an area in which restriction would clearly be reasonable, even though the terms of the agreement imposed a larger and unreasonable restraint. . . .  The question usually is whether a restriction against what the defendant has in fact done or is threatening would be a reasonable and valid restriction.

*Ceresia*, 242 S.W.2d at 359.  In this case, the 100-mile restriction is reasonable but it should apply only to the three Kentucky ASI offices that were open at the time of the agreement.  The text and context of the agreement clearly demonstrate that ASI's primary concern was with Chamberlin competing in Cincinnati, Ohio, a concern fully accounted for by the court's limitation of the agreement.

Chamberlin objects that the three-year duration of the non-compete clause

11

is per se unreasonable.  Under Kentucky law, a three-year duration is allowable

for a non-compete provision so long as it is "confined to a reasonable territory."

*Hammons*, 567 S.W.2d at 315.  Therefore, because the court has already found

the geographical restriction to be reasonable, the three-year duration of the non-

compete agreement is also reasonable.

Chamberlin also objects to the range of the activities the non-compete

provision prohibits him from undertaking for a competitor.  Essentially,

Chamberlin cannot work in any capacity for any company that sells Autodesk in

any market within 100 miles of an ASI office nearest to a client or prospect

served by him during his employment at ASI.  Because of the sensitivity of the

information to which Chamberlin was exposed during his tenure at ASI, this

restriction is reasonable on its face with the court's alteration of the agreement

to include only the three Kentucky ASI offices that were open on the date of the

agreement.

Finally, Chamberlin argues that his termination of the agreement

extinguished its three-year non-compete provision because the agreement did

not provide for the non-compete to survive the termination of the agreement.

The agreement allows that "[e]ither party may terminate this Agreement on ten

(10) days written notice."  As the Sixth Circuit has noted, "the general canon of

contract construction . . . requires that, if possible, every provision in a contract

be given effect, if it can reasonably be done, and held to have been inserted for

12

some purpose and to perform some office." *Personal Industrial Bankers, Inc. v.*

*Citizens Budget Co.*, 80 F.2d 327, 328 (6th Cir. 1935).  In accordance with

this canon, the court interprets the agreement's ten-day notice provision for

termination as applying solely to the ongoing employment relationship between

ASI and Chamberlin and not to the three-year non-compete clause.  This

interpretation allows the court to give effect to both provisions.  Consequently,

the non-compete provision is still in effect notwithstanding Chamberlin's

termination of his employment relationship with ASI, and this final defense by

Chamberlin fails.

**IV.**    **Conclusion**

Accordingly,

**IT IS ORDERED** that the defendant's motion to dismiss, DE 5, is **DENIED**.

Signed on  November 27, 2007

Jennifer B. Coffman, Judge
United States District Court